**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Aparicio,<br><br>    Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin, Commissioner of the Social Security Administration,<br><br>    Defendant. | CIV 14-0595-PHX-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Frank Aparicio's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income in 2011. (Transcript of Administrative Record ("Tr.") at 15, 180-87.) His claims proceeded through the administrative process and were denied in an ALJ decision dated November 21, 2012, following a hearing. (Tr. at 12-28, 40-80.) Plaintiff timely requested review, which the Appeals Council denied on January 23, 2014, making the ALJ's decision the final decision of the Commissioner. (Tr. at 1-6.) Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

\\\

\\\

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error.  See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2)  determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993). The Commissioner must consider claimant's residual functional capacity and vocational factors, such as age, education and past work experience. Id.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 23, 2009 – the alleged onset date. (Tr. at 17.) At step two, he found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine with disc herniation. (Tr. at 17-18.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations. (Tr. at 18.) After consideration of the entire record, the ALJ found that Plaintiff retained the residual functional capacity "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except limited to frequently climbing ramps, stairs; occasional climbing ladders, ropes, scaffolds; frequent balancing, stooping, kneeling, crouching; and occasional crawling. The claimant should avoid concentrated exposure to hazards, including unprotected heights and moving machinery."[1] (Tr. at 18-23.)

The ALJ found that Plaintiff is capable of performing past relevant work as a retail sales clerk, DOT# 290.477-014, classified as light, SVP3, semi-skilled. (Tr. at 23.) Thus, the ALJ concluded that Plaintiff "has not been under a disability ... from April 23, 2009, through the date of this decision." (Tr. at 23.)

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by (1) failing to properly weigh medical source opinion evidence; and (2) failing to find that Plaintiff's alleged back impairment met or equaled the elements of a listed impairment.[2]

### A.     Medical Source Opinion Evidence

Plaintiff contends that the ALJ erred by failing to properly weigh medical source opinion evidence. Specifically, Plaintiff argues that the ALJ should have given controlling weight to the opinion of Dale Ratcliffe, D.O. Plaintiff also alleges that the ALJ's decision to give "great weight" to the opinions of the state agency physicians was error.

"The ALJ is responsible for resolving conflicts in the medical record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d at 1164. Such conflicts may arise between a treating physician's medical opinion and other evidence in the claimant's record. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit has held that a treating physician's opinion is entitled to "substantial weight." Bray v. Comm'r, Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). A treating physician's opinion is given controlling weight when it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(d)(2). On the other hand, if a treating physician's opinion "is not well-supported" or "is inconsistent with other

---

[2] Plaintiff appears to assert an additional claim stating, generally as the heading of his argument, that the ALJ "misinterpreted evidence to the detriment of the claimant." Under this heading, Plaintiff discusses the ALJ's reliance on the opinions of the state agency physicians. The Court will address the objective medical evidence including the ALJ's reliance on the state agency physicians in its discussion of the medical source opinion evidence.

- 4 -

1 substantial evidence in the record," then it should not be given controlling weight. <u>Orn v. Astrue</u>, 495 F.3d 624, 631 (9th Cir. 2007).

If a treating physician's opinion is not contradicted by the opinion of another physician, then the ALJ may discount the treating physician's opinion only for "clear and convincing" reasons. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1164 (quoting <u>Lester</u>, 81 F.3d at 830). If a treating physician's opinion is contradicted by another physician's opinion, then the ALJ may reject the treating physician's opinion if there are "specific and legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> (quoting <u>Lester</u>, 81 F.3d at 830).

Since the opinion of Dr. Ratcliffe was contradicted by the medical evidence of record, including the state agency physicians who ultimately determined Plaintiff "not disabled," the specific and legitimate standard applies.

Historically, the courts have recognized the following as specific, legitimate reasons for disregarding a treating or examining physician's opinion: conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain; and medical opinions that are brief, conclusory, and inadequately supported by medical evidence. <u>See, e.g.</u>, <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005); <u>Flaten v. Secretary of Health and Human Servs.</u>, 44 F.3d 1453, 1463-64 (9th Cir. 1995); <u>Fair v. Bowen</u>, 885 F.2d 597, 604 (9th Cir. 1989).

Here, the ALJ analyzed the medical evidence in extensive detail, specifically considering the treatment notes and findings of Michael Castillo, M.D.; Dr. Ratcliffe and records from Desert Pain & Rehab Specialists; as well as, the state agency consultative examiners. (Tr. at 19-23.)

Plaintiff is a 45-year-old man alleging an onset date of April 23, 2009, coinciding with the last day he worked. He has a high school education. He has past relevant work experience of a retail sales clerk, which has an exertional level of light, and is semi-skilled. He has alleged severe lumbar problems in his back, with radiating pain, tingling, and numbness in the left leg.

1          Dr. Castillo diagnosed nerve root compression, recommended epidural steroid
2   injections, and thought there was a good chance Plaintiff would need surgery. (Tr. at
3   293-94.) Plaintiff reported mixed results from epidural steroid injections, noting that the pain
4   eventually returned. (Tr. at 290, 295, 298, 302.) Dr. Castillo described the three epidural
5   steroid injections as "failed," and he referred Plaintiff to a neurosurgeon. (Tr. at 301.) The
6   surgeon initially recommended surgery, but later rendered a second opinion in which he did
7   not recommend surgery. (Tr. at 310.) Upon re-examination in February 2010, Dr. Castillo
8   concluded that Plaintiff had "left lateral femoral cutaneous neuropathy," a diagnosis that he
9   had missed before. (Tr. at 310.) He noted lumbar facet tenderness and MRI changes
10  consistent with his diagnosis. (Tr. at 310.) He discussed doing a nerve block for this
11  condition, but first wanted to see if it would resolve on its own. (Tr. at 310.)

12         In January and February 2010, Plaintiff reported that his pain medication was working
13  well. (Tr. at 305, 308.) His constant leg pain had reduced to intermittent pain. (Tr. at 310.)
14  In March, he reported that his pain was improving with exercise and his medication was still
15  working well, despite reporting some continuing pain. (Tr. at 311.) Plaintiff did not return
16  to see Dr. Castillo until January 2011. (Tr. at 314.) Due to the neuropathy, Dr. Castillo
17  discussed doing a nerve block or rhizotomy. (Tr. at 317.) He noted that although prior
18  epidural steroid injections were not helpful, Plaintiff's radicular symptoms had resolved. (Tr.
19  at 317.) At the next visit, Dr. Castillo refused to refill Plaintiff's narcotic pain medications
20  because Plaintiff tested positive for cocaine. (Tr. at 319.) He noted that Plaintiff could get
21  non-steroidal anti-inflammatory medications from his primary care doctor, and did not need
22  to follow up with a specialist for that purpose. (Tr. at 319.) Dr. Castillo recommended
23  stretching of the groin area, and if that did not work, then nerve blocks and possible
24  rhizotomy might be of benefit. (Tr. at 319.) Plaintiff apparently did not return to see Dr.
25  Castillo.

26         Plaintiff later began treatment with Dr. Ratcliffe in December 2011. (Tr. at 352.)
27  Plaintiff reported that he had moderate pain relief with Percocet without side effects in the
28  past. (Tr. at 352.) Dr. Ratcliffe prescribed Percocet and epidural steroid injections. (Tr. at

1 353.) On April 26, 2012, Dr. Ratcliffe completed a Medical Assessment of Ability to do
2 Work Related Activities. (Tr. at 334-36.) Dr. Ratcliffe opined that Plaintiff could stand/walk
3 ten minutes at a time for a total of two hours a workday; he could sit thirty minutes at a time
4 for a total of two hours a workday; he needs to change positions every fifteen to twenty
5 minutes; he can never stoop, squat, crawl, climb, or reach; he can only occasionally
6 push-pull; he is restricted from heights, machines, driving, dust, and temperature or humidity
7 extremes. (Tr. at 334-36.)

8 In both April and May 2012, Plaintiff reported a mild reduction in his pain with
9 Percocet, and a moderate improvement in his lower leg pain after facet joint injections. (Tr.
10 at 343, 346.) In June 2012, Plaintiff reported a mild to moderate reduction of his pain with
11 the third injection and "continued stability of his pain without adverse side effects" from
12 Percocet. (Tr. at 340.) By July, Plaintiff was reporting mild to moderate pain relief from the
13 injections, moderate improvement of his lower leg pain, and continued stability of his pain
14 without adverse side effects. (Tr. at 337.) Dr. Ratcliffe assessed "marked improvement" of
15 his bilateral lower leg pain, with a mild instability of pain with the current regimen. (Tr. at
16 339.)

17 Initially, the ALJ noted that, "[i]n terms of the claimant's alleged impairments, the
18 record fails to demonstrate the presence of any pathological clinical signs, significant medical
19 findings, or any neurologic abnormalities that would establish the existence of a pattern of
20 pain of such severity as to prevent the claimant from engaging in any work on a sustained
21 basis." (Tr. at 19.) He further found that, "[n]o physician has stated that the claimant is
22 unable to work, and the claimant's own treating and examining physicians have not assessed
23 the claimant with any work-related restriction, or that the claimant must lie down frequently
24 ... ." (Tr. at 19.)

25 Regarding Dr. Ratcliffe, the ALJ found that the limitations opined in his report
26 seemed extreme and not consistent with the greater evidence of record or Dr. Ratcliffe's own
27 treatment records. (Tr. at 22.) A physician's opinion may be rejected because it is
28 inconsistent with his medical records. See, e.g., Connett v. Barnhart, 340 F.3d 871, 875 (9th

1  Cir. 2003) ("We hold that the ALJ properly found that [the physician's] extensive
2  conclusions regarding [the claimant's] limitations are not supported by his own treatment
3  notes.  Nowhere do his notes indicate reasons why [the physician would limit the claimant
4  to a particular level of exertion]."); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)
5  (holding that the ALJ properly rejected a physician's testimony because "it was unsupported
6  by rationale or treatment notes, and offered no objective medical findings to support the
7  existence of [the claimant's] alleged conditions"); Batson v. Comm'r of Soc. Sec., 359 F.3d
8  1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are
9  conclusory, brief, and unsupported by the record as a whole, or by objective medical
10 findings).

11        Further, the ALJ determined that the limits opined by Dr. Ratcliffe appeared to be
12 based on Plaintiff's own subjective reports – not supported by medical or objective findings
13 – especially in light of Plaintiff's reported activities of daily living as set forth in Plaintiff's
14 testimony and throughout the medical record.  (Tr. at 22.)  These were valid reasons to
15 discount the opinion.  See, e.g., Bray, 554 F.3d at 1228 (finding the ALJ could reject a
16 treating doctor's work restrictions, which were drafted at the claimant's request and based
17 on the claimant's subjective characterization of her symptoms – symptoms the ALJ found
18 not entirely credible); Batson, 359 F.3d at 1195 (unsupported by clinical findings and
19 unsupported by the record as a whole); Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir.
20 2008) (based on subjective statements the ALJ found not credible); Morgan v. Comm' r of
21 the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (inconsistent with other evidence in
22 the record, including a claimant's daily activities).

23        Lastly, the ALJ concluded that Plaintiff's length and frequency of treatment has been
24 relatively short in duration and that Plaintiff only saw Dr. Ratcliffe for "only a few pain
25 management treatments in 2012 ... ."  (Tr. at 22.)

26        Next, the ALJ discussed the opinions of the state agency physicians.  (Tr. at 22-23.)
27 The ALJ noted that the state agency physicians were unable to formulate an opinion
28 regarding Plaintiff's residual functional capacity based on insufficient evidence in the file.

1  (Tr. at 23.) However, the ALJ also noted that Plaintiff failed to cooperate by failing to attend
2  his consultative examinations and return disability development forms for the consulting
3  physicians to fully assess Plaintiff's alleged limitations. (Tr. at 23.) Nevertheless, the ALJ
4  found that the state agency physicians' ultimate conclusions that Plaintiff is "not disabled"
5  were given "great weight" since these findings were supported by other reasons and evidence
6  of record. (Tr. at 23.)

7  The Court finds that the ALJ properly weighed the medical source opinion evidence
8  (including the state agency physicians' assessments) related to Plaintiff's impairment, and
9  gave specific and legitimate reasons, based on substantial evidence in the record, for
10 discounting Dr. Ratcliffe's opinion. Therefore, the Court finds no error.

11 **B.     The ALJ's Step Three Determination**

12 Plaintiff argues that the ALJ erred in his step three determination by failing to find that
13 Plaintiff's alleged back impairment met a Listing.

14 The Listings describe specific impairments of each of the major body systems which
15 are considered "severe enough to prevent a person from doing any gainful activity, regardless
16 of his or her age, education, or work experience" and designate "the objective medical and
17 other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 404.1525(a), (c)(3),
18 416.925(a), (c)(3). A mere diagnosis is insufficient to meet or equal a listed impairment; a
19 claimant must establish that he or she "satisfies all of the criteria of that listing ... ." Id. at
20 §§ 404.1525(c)(3), (d), 416.925(c)(3), (d).

21 To equal a listed impairment, a claimant must establish symptoms, signs, and
22 laboratory findings "at least equal in severity and duration" to the characteristics of a relevant
23 listed impairment. See 20 C.F.R. §§ 404.1526 (explaining medical equivalence); 416.926
24 (same). Medical equivalence can be found for a listed impairment, an unlisted impairment,
25 or a combination of impairments. See id. §§ 404.1526(b), 416.926(b).

26 The ALJ is obligated to consider the relevant evidence to determine whether a
27 claimant's impairment or impairments meet or equal one of the specified impairments set
28 forth in the Listings. See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001); 20 C.F.R. §

416.920(a)(4)(iii). Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a Listing]." Lewis, 236 F.3d at 512; see Marcia, 900 F.2d at 176 (noting that the ALJ's unexplained finding at step three was reversible error). The Ninth Circuit has recognized, however, that the ALJ need not recite the reasons for his or her step three determination so long as the evidence is discussed in the ALJ's decision. See Lewis, 236 F.3d at 513. Moreover, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude that an impairment could meet or equal a Listing. See Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990).

Here, the ALJ found that:

> The record does not support the existence of any functional limitations and or diagnostic test results that would suggest that the severity of the impairments meet or equal the criteria of any specific listing. In addition, no treating or examining physician has reported findings that either meet or are equivalent in severity to the criteria of any listed impairment, nor are such findings indicated or suggested by the medical evidence of record. In particular, I note that the record does not document the abnormalities or limitations required to meet the requirements of Listings 1.04 for musculoskeletal disorders.

(Tr. at 18.)

The Court, having reviewed the evidence of record and the ALJ's findings regarding the Listings at issue (1.04 – Disorders of the spine), finds that the ALJ adequately stated the foundations on which his ultimate conclusions were based, discussing at length, the objective medical evidence supporting his findings. (Tr. at 18-23.) Substantial evidence supports the determination that Plaintiff's impairments do not meet Listing 1.04.

Listing 1.04 requires, among other things, evidence of nerve root compression characterized by findings of neuro-anatomic distribution of pain; limitation of motion of the spine; and motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss. See 20 C.F.R. pt. 404, subpt. P, app. 1, Listing 1.04. In this case, Dr. Castillo noted normal muscle strength and tone with no evidence of muscle wasting or focal deficits. (Tr. at 293, 296, 299, 303, 306, 309, 312, 316.) Dr. Ratcliffe did not note any abnormalities in the area of motor loss. (Tr. at 338, 341, 344, 347, 350), and

upon initial examination, noted that Plaintiff had full strength in all limbs. (Tr. at 353.) Dr. Castillo also concluded that Plaintiff could stand and walk for ten minutes at a time, for a total of two hours per day, and he did not say Plaintiff needed assistance to do so. (Tr. at 334.) Plaintiff reported being independent in his activities of daily living, (Tr. at 337), and he did not testify that he had any trouble walking short distances (Tr. at 63, 66, 69, 75). Dr. Castillo also noted a negative straight leg raise test on both sides in both the seated and supine positions the last time he examined Plaintiff in January 2011. (Tr. at 316.)

Accordingly, the record does not contain the objective medical findings required by Listing 1.04 and, thus, the ALJ reasonably found that Plaintiff's condition did not satisfy the criteria of Listing 1.04. The Court finds no error.

## V.  CONCLUSION

Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for disability insurance benefits and supplemental security income. Consequently, the ALJ's decision is affirmed.

Based upon the foregoing discussion,

**IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social Security be affirmed;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 18th day of September, 2015.

Michelle H. Burns
United States Magistrate Judge

- 11 -